```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------- x
                                                :
UNITED STATES OF AMERICA,                       :
                                                :      **Memorandum and Order**
                                                :
              -against-                         :      06-cr-351 (DLI)(JO)
                                                :
                                                :
LUCASZ SERAFIN,                                 :
                                                :
                      Defendant.                :
                                                :
----------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

Defendant Lucasz Serafin was charged with conspiring to traffic in stolen motor vehicles in violation of 18 U.S.C. §§ 371 and 3551 *et. seq.* and selling a stolen motor vehicle, in violation of 18 U.S.C. §§ 2313, 2 and 3551 *et. seq*. He was found guilty on both counts after a six-day jury trial held on October 23 to November 3, 2006. Defendant moves for a new trial pursuant to Fed. R. Crim. P. 33, contending that the government's main witness against him, an accomplice cooperator, has recanted his trial testimony. For the reasons set forth below, defendant's motion is denied.

## I.      Background

On August 31, 2006, Ryszard Grzybek, Lukasz Serafin and three codefendants were charged in a superseding indictment with conspiracy to traffic in stolen motor vehicles and commit mail fraud, among other offenses. (Dkt. No. 53.) On September 11, 2006, Grzybek pled guilty and agreed to testify against his co-defendants. (Dkt. No. 55.) After the other co-

defendants pled guilty, Serafin alone proceeded to trial before the Honorable Carol B. Amon.[1]

### A. Serafin Trial

At trial, co-defendant Grzybek testified on behalf of the government that he and Serafin stole a black BMW from an automobile auction lot in Mannheim, PA to which Serafin had access. (Mem. of Law in Opp'n to Def.'s Mot., ("Gov't Mem.") at 3). The two tried to sell the BMW, and Grzybek found a willing buyer who turned out to be a confidential informant for the Federal Bureau of Investigation ("FBI"). On April 13, 2005, Grzybek drove the stolen BMW to the Greenpoint section of Brooklyn to sell it to the informant. Serafin followed in his own car to give Grzybek a ride back to New Jersey. (*Id*. at 4.) The informant testified that, during their meeting in Greenpoint, Grzybek summoned Serafin to discuss the price. (*Id*.) Serafin approached them briefly but declined to talk. Undercover FBI surveillance agents observed the meeting and testified that they saw Serafin pacing nervously near his own car. (*Id.* at 5.)

The FBI was previously unaware of Serafin's role in the conspiracy. When the informant stepped aside during a break in the bargaining, the FBI instructed him to approach Serafin. When the informant did so, Serafin refused to make eye contact and speak. Grzybek later explained to the informant that Serafin was frightened because he did not know the buyer. (*Id*.) After the sale of the BMW, Grzybek sold the informant a Mercedes, which he said was also stolen by Serafin from the Mannheim lot. A search of the vehicle identification numbers of the BMW and Mercedes confirmed that both had been stolen from the same Mannheim lot. (*Id*. at 6.)

---

[1] Co-defendant Zbigniew Grochowski entered a guilty plea on the eve of trial on October 30, 2006. (*See* Dkt. No. 89.) He was sentenced by Judge Amon on May 15, 2007 to four years' probation with the special condition of one month of in-community confinement and five months of monitored home detention. (Dkt. No. 109.) He then appealed from the judgment. By summary order dated July 3, 2008, the United States Court of Appeals for the Second Circuit affirmed the judgment of conviction. (Dkt. No. 146.)

A security employee with the Mannheim auction testified that only authorized personnel had access to the lot, and that Serafin had such authorization in 2005.

The government also pointed to a recorded conversation between Grzybek and the informant on February 24, 2006 in which Grzybek claims to have called a person who could supply five Volvos. (See Ex. A to Gov't Mem.) Grzybek later identified that person to be Serafin. Cellular phone records confirmed that Grzybek had in fact called Serafin that day. (Gov't Mem. at 7.)

The jury found Serafin guilty of conspiracy to transport a stolen vehicle across state lines and selling such a stolen vehicle. After the trial, Grzybek was sentenced to time served in April 2007 and subsequently was deported to Poland. (Dkt. No. 98.) On June 22, 2007, the case was reassigned from Judge Amon to this court for sentencing.[2]

### B. Purported recantation letter

On July 19, 2007, the defendant requested that sentencing be adjourned because his grandmother was gravely ill and that his relatives would be traveling to Poland. The court agreed to adjourn sentencing to August 30, 2007. On August 30, 2007, the court was informed that the defendant had obtained a letter purportedly from Grzybek in which he recanted his trial testimony. This purported recantation letter is attached as Exhibit A to his motion. (Dkt. No. 126, Ex. A). The first page of the two-page exhibit contains three lines of type-written Polish text, a photocopied image of three postmarked Polish postage stamps, and a handwritten address identifying Andrej Serafin in Old Bridge, NJ. The date of the postmark is unclear from the

---

[2] Immediately prior to the sentencing of Serafin, Judge Amon became aware, for the first time, of certain facts that created a conflict in her continued handling of the matter, prompting the reassignment.

photocopy. The second page contains an apparent translation of the text from the first page.[3] It states in its entirety:

> I was forced to testify against Lukas Serafin and Zbigniew Grochowski. Everything that I testified to against these persons is not true. I was forced to testify to these things and for this, I was promised a light sentence.

This statement is not addressed to anyone or signed by anyone. It is neither dated nor sworn, and does not indicate who had forced Grzybek to testify falsely in exchange for a lenient sentence.

Defendant also submitted an affidavit by his father, Andrew Serafin ("Andrew"), which purports to shed light on the origins of Grzybek's statement. (Aff. of Andrew Serafin ("Serafin Aff.") attached as Ex. B to Def.'s Mot., Dkt. No. 126-5.) Andrew says the statement was contained in a letter from Grzybek that he received on August 28, 2007. He gave the statement to the defendant the next day. Andrew indicates that, after the defendant was convicted, he received several international calls on his cellular phone. (Serafin Aff. ¶ 4.) He did not answer the calls, but learned from an individual named Rafael Martinez that the calls were from Grzybek, who was trying to reach him. Andrew obtained Grzybek's telephone number from Martinez and, while attending the funeral of his mother-in-law in Poland, called Grzybek to ask him to "write a letter telling the truth about what had happened with [defendant]." (*Id*. ¶ 9.) According to Andrew, it had been the dying wish of his mother-in-law to have Grzybek write such a letter. (*Id.*) He indicates that Grzybek agreed and later called him back to ask for the mailing address. (*Id*. ¶ 10).

When informed of the purported recantation letter, the court adjourned defendant's sentencing and granted the parties time to investigate the matter. On October 3, 2007, the court granted the government additional time to locate Grzybek with the help of a legal attaché to the

---

[3]  There is no indication as to who translated the document.

U.S. Embassy in Poland and to have a postal clerk examine the postmark, which appears to be dated "2008" instead of "2007." At a conference on November 8, 2007, the government reported that it was unable to locate Grzybek in Poland and that the evaluation of the postmark was not dispositive. The court granted defendant leave to file this motion.

After the instant motion was filed, by letter dated September 29, 2008 (Dkt. No. 148), the government supplemented its opposition papers by providing a report from the FBI. The report states that Grzybek had been located in Poland and interviewed. Grzybek denied having ever recanted his testimony or written or forwarded the letter in question. Indeed, in Grzybek's statement to the authorities, he alleges that sometime in September or October 2007, he received a call from defendant wherein defendant expressed resentment towards him because of his testimony and his being at liberty in Poland. Defendant asked Grzybek to write a letter indicating that his testimony was a lie so that he could "whiten" himself. (*Id*. FBI Report p. 2.) Grzybek refused. Sometime thereafter, defendant's father, Andrzej (Andrew) Serafin, called Grzybek and made the same request, which Grzybek refused.

When shown a copy of the letter, Grzybek was surprised and adamantly denied writing or sending it. While the penmanship resembled Grzybek's, he was "convinced" that he did not write the letter, adding that members of Serafin's family in the United States have documents written and signed by him. (*Id*. p. 3.) The Polish authorities were able to verify that the letter was mailed from Poland on August 20, 2007. To date, defendant has not responded to this FBI report or the government's letter.

## II.     Standard of Review

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R.

5

Crim. P. 33. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The Second Circuit has stated that a district court should exercise such authority only "in the most extraordinary circumstances." *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal citation omitted).

### III. Discussion

Before a district court can grant a motion for a new trial under Rule 33 on the ground that a testifying witness has recanted his or her testimony, the defendant must show "(1) that the testimony recanted was false and material; (2) that without the original testimony [,] the jury probably would have acquitted the defendant; and (3) that the party seeking the new trial was surprised when the false testimony was given or did not know of its falsity until after the trial, and could not with due diligence have discovered it earlier." *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987) (internal citations omitted). The defendant bears the burden of satisfying each of the elements in this three-prong test. *United States v. Schlesinger*, 438 F. Supp. 2d 76, 101 (E.D.N.Y. 2006); *DiPalo*, 835 F.2d at 49. The court finds that defendant has not satisfied his burden, particularly as to the first prong of the test.

Under the first prong of the *DiPaolo* test, the defendant must show that Grzybek's testimony at trial was false. Defendant attempts to do so by alleging that Grzybek has, in fact, recanted his testimony. Traditionally, "the recantation of testimony given at trial is looked upon with the utmost suspicion." *Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir. 1988) (quoting

*United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1318 (2d Cir. 1975)). This is so "because recantations upset[] society's interest in the finality of convictions, [are] very often unreliable and given for suspect motives." *United States v. Haouari*, 510 F.3d 350, 353 (2d. Cir. 2007) (citing *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984)). Suspicion is especially warranted in this case because the "evidence" submitted in support of the recantation is an undated, unsigned, and unsworn blanket statement of recantation attributed to Grzybek that was apparently made at the behest of defendant's father, an interested party. Moreover, the authenticity of the letter is further cast in doubt by the FBI report indicating that the witness denied writing the letter and had refused the telephonic requests by defendant and defendant's father that he write such a letter.

The Second Circuit recently held that an unsworn and uncorroborated letter from a criminal accomplice attempting to recant sworn testimony that had been subjected to cross examination, without more, could not satisfy the *prima facie* showing required to support defendant's motion to vacate a conviction under the Antiterrorism and Effective Death Penalty Act. *Haouari*, 53 F.3d at 354 (finding that "cases involving different stages of habeas review and cases outside the habeas context amply support the view that a general, unsworn recantation . . . is insufficient to contradict sworn trial testimony."). *See also Sanders v. Sullivan*, 863 F.2d at 222 (noting that a "credible recantation" is a prerequisite to establishing a due process violation). Although the defendant here is moving to vacate a jury verdict pursuant to Rule 33, not AEDPA, he also is relying on an uncorroborated statement of a criminal accomplice to recant sworn testimony that had been subjected to cross examination. The Second Circuit in *Haouri* notes that the requirement of a sworn affidavit is not meant to be "a difficult hurdle to clear," but "without the possibility of penalty for perjury, convicted co-conspirators" would "have nothing to lose by

writing letters attempting to free those who aided them in their criminal schemes." *Haouri*, 53 F.3d at 354.

Unlike in *Haouri*, where the unsworn, conclusory letter was known to have been written by an accomplice in prison, in this case, it appears from all of the facts and circumstances presented to the court that it is highly unlikely the unsworn statement attributed to Grzybek was in fact made by him. The court has taken the allegations by the defendant very seriously and has given the parties several months to investigate the accuracy of the purported recantation letter. The Assistant United States Attorney enlisted other government agencies to locate Grzybek and to assess the validity of the postmark on the Polish stamps. Initially, the U.S. Embassy in Poland was unable to locate him and Polish postal authorities were unable to resolve the ambiguous postmark. These facts do not satisfy defendant's burden of proving the falsity of Grzybek's trial testimony. If defendant's father is to be believed, Grzybek was readily accessible through cellular phone contact, but the defendant has neither produced Grzybek for examination nor submitted a sworn affidavit from him. Moreover, the fact that defendant's father and apparently other family members, by the father's own sworn affidavit, initiated the writing of this statement makes it even more suspect. Grzybek was said to have disappeared some time after the writing.

Ultimately, however, the FBI, with the assistance of the Polish National Police ("PNP"), located Grzybek. He adamantly denied writing or sending the letter or that he was given any specific promise by the government as to the sentence he would receive in return for his cooperation at trial. Grzybek further stated that both defendant and his father had called him in attempts to have Grzybek recant his testimony by letter. Grzybek refused to do so. The witness further added that the Serafins had access to documents written and signed by him, implying that they had the means with which to forge his writing. Finally, the PNP was able to determine that

the letter had been mailed from Poland on August 20, 2007, during which time defendant's father admittedly was in Poland. Under these highly suspect and troubling circumstances, the court will not disturb the finality of the jury verdict.

The court also finds a hearing to be unnecessary in this case. *See DiPaolo*, 835 F.2d at 51 ("When a motion for a new trial is predicated entirely on an affidavit from a trial witness who recants her testimony, a trial judge can ordinarily deny it without a hearing."). As detailed above, the only support for the motion is an unsworn, undated, highly unreliable blanket statement purportedly made by the allegedly recanting witness and the self-serving affidavit of the defendant's father, which casts more rather than less doubt on the reliability of the statement.

### IV. Conclusion

Accordingly, defendant's motion to vacate the conviction pursuant to Fed. R. Crim. P. 33 is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
December 4, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge